## Case No. 14,214.

### Ex parte TUCKER.

[1 Cranch, C. C. 89.] [1]

Circuit Court, District of Columbia.    April Term, 1802.

#### NATURALIZATION—RESIDENCE—DEPOSITION.

Upon application for naturalization a deposition in 1802, that the deponents have known the applicant "since the year 1793, in New York," is not evidence that he was residing in the United States before the 29th of January, 1795.

John Tucker, a native of the Island of Bermuda, applied to be admitted a citizen of the United States, under the law of April 14th, 1802. A deposition of Governeer and Kemble, taken before a notary-public, stated that they have known him "since the year 1793, in New York, and that he was a supercargo in their employ in the year 1795, and continued till 1798."

The application was made under the clause authorizing persons resident in the United States before the 29th of January, 1795, to become citizens on proof of two years residence, &c.

THE COURT were unanimously of opinion that the affidavit was not sufficient.

---

TUCKER. Ex parte. See Case No. 10,547.

---

## Case No. 14,215.

### In re TUCKER.

[2 Tex. Law J. 171.]

District Court, W. D. Texas.    July 12, 1878.

#### BANKRUPTCY — DISCRETIONARY POWERS OF AS-SIGNEE—EXEMPTIONS.

An assignee in bankruptcy, under the discretionary powers vested in him by the provisions of section 5045, Rev. St., cannot set apart money, unless such money is the proceeds of the sale of specific property embraced within the exemptions, which should and ought to be set apart to the bankrupt, or for temporary support, where the family is entirely destitute.

In pursuance to an order of the honorable court made in the chambers at Austin, on the 22d day of June, 1878, referring to me, one of the registers of said district, the petition of F. N. Tucker, bankrupt, aforesaid, praying that an allowance of five hundred dollars in money be paid to him out of the funds belonging to said bankrupt estate in the hand of F. B. Bryan, assignee, which he claims as an exemption, under the provisions of section 5045, Rev. St. U. S., I ordered a hearing of said matter at Dallas, in said district, on the 12th day of July, 1878, and also ordered, at the same time and place, the examination of the bankrupt. The petition of said bankrupt, asking such allowance, having been indorsed and recommended by said assignee at the hearing thereof, I appointed Messrs. Brookhout & Simpson, attorneys, to represent the interests of the general creditors, and Gen. W. L. Caball & Harris appeared as attorneys for said bankrupt. At the hearing said bankrupt and other witnesses were examined touching his business and dealings prior to the commencement of proceedings in bankruptcy, his means of support and present status, and condition of those connected with him, from which, and from an examination of the schedules of said bankrupt, on file, the following facts are made to appear: (1) That said bankrupt is a single man, has never been married, and has no family of his own; that his liabilities, as shown by his schedules on file, amount to near $6,000, and assets, consisting of a stock of groceries, merchandise, etc., was invoiced by the assignee at $2,643.-03, with some notes and accounts of no fixed or determinate value. (2) That the family consists of said bankrupt, his mother and two brothers, who live together on the homestead of his mother in the city of Dallas; that his mother is an invalid, and that his younger brother, who is about 19 years of age, has nearly lost his eyesight; that said bankrupt filed his petition in voluntary bankruptcy on the 22d day of January, 1878, in said court; that prior thereto he was possessed of certain real estate, to-wit, a house and lot in the city of Dallas, which he claimed as a homestead, and that between the 1st and 10th of January, only a few days before he filed his petition in bankruptcy, he sold said property to Messrs. Snieder & Davis, merchants in the city of Dallas, and agents for Zeeblow & Beacham, for the sum of $1,400, $1,100 of which he paid to said parties, and the balance, $300, he paid to another house in the city of St. Louis. It further appears that the furniture for his mother's house was furnished by said bankrupt, which he states still belongs to him, though not rendered in his schedules of assets, and value not given.

By S. T. NEWTON, Register:

The assignee having indorsed and recommended the allowance claimed by the bankrupt in his petition, it may be viewed, so far as his act is concerned, in the light of the certificate of exemptions which the law requires him to make to each bankrupt, under section 5045, Rev. St., and by which act he is invested with discretionary powers.

The question then presented upon the facts as above reported is, was the assignee correct, in the exercise of the sound discretion with which the law invests him, in recommending the allowance, and do the facts bring the case within the purview of any reported adjudications upon the subject where money out of the assets of the estate has been allowed? I have been referred, by counsel for the bankrupt, to the following adjudications as authorities sustaining their position: In re Ruth [Case No. 12,172]; In re Cobb [Id. 2,920]; In re Thornton [Id. 13,994]; In re Hay [Id. 6,253]; In re Thompson [Id. 13,938]. From a careful examination of these authorities, I am unable to see their applica-

[1] [Reported by Hon. William Cranch, Chief Judge.]